[Crim. No. 4188.   Second Dist., Div. One.   May 21, 1948.]

THE PEOPLE, Respondent, v. JESUS TOLEDO, Appellant.

William B. Neeley, Public Defender, for Appellant.

Fred N. Howser, Attorney General, Frank Richards, Deputy Attorney General, Wm. E. Simpson, District Attorney, and Jere J. Sullivan, Deputy District Attorney, for Respondent.

DORAN, J.—The defendant, Jesus Toledo, was charged with the murder of one Andres Lopez, the crime being alleged to have occurred on February 23, 1947. A jury being waived, the matter was tried by the court upon a stipulation that the cause be submitted on the testimony presented at the preliminary examination, subject to the right to present other evidence. After reading the transcript of the preliminary examination and listening to additional evidence, the trial court found the defendant guilty of manslaughter; a motion for a new trial was denied and the defendant sentenced to State Prison.

The record discloses that the defendant, Jesus Toledo, and one Pedro Mendez, lived in a small, two-room shack in El Monte, California; that on the evening of February 22, 1947, the deceased, Andres Lopez, a friend, came over to the shack. Joe Lopez, a neighbor, and not related to the deceased, was also present several times during the evening, the last time being about 1 a.m. Sunday, February 23d. The parties were all Mexicans; the age of the deceased was 62 while the defendant was 38 years old. There was considerable drinking during the evening; and according to the testimony of Joe Lopez, about one o'clock Sunday morning, the defendant and the deceased were both intoxicated. It appears that at this time the defendant, who was either sitting or lying on the bed, requested Andres Lopez, the deceased, to be quiet, or to leave, whereupon the deceased struck the defendant over the head with a bottle, breaking the bottle. Joe Lopez then upbraided the deceased for striking the defendant, and testified: "I told him he shouldn't do it, that it wasn't right. And right at the time he (the deceased) took his knife out.

. . . He had it in his hand with the knife open." This knife is elsewhere referred to as a "Boy Scout" knife.

Following this initial difficulty, Joe Lopez started to go home and was followed out of the shack by the deceased who then, after an obscene comment, struck with the knife and knocked Joe Lopez to the ground. The latter testified that a wrist cut resulted from this assault, and in the language of appellant's brief, "As Joe Lopez got free of the deceased he picked up a piece of board lying on the ground and as the deceased again advanced with the knife, he struck the deceased with the board," and then ran home.

There is evidence that the defendant, hearing the sound of the struggle outside the door, went out, took hold of the deceased's collar, and pulled the deceased away from Joe Lopez. According to the defendant, the deceased struck at defendant with the knife, cutting a leather jacket worn by the latter. Jesus Toledo, the defendant, then picked up a piece of pipe which was on the ground near by, and struck the deceased twice as deceased advanced with the knife. With the striking of the second blow the deceased fell to the ground. It was the defendant's testimony that there was no intent to kill, and upon being asked, "Why did you kill him?," replied "Because if he killed me I was afraid."

The defendant first covered the deceased with a piece of canvas; later on, on concluding that Andres Lopez was dead, defendant and Pedro Mendez buried the body in a shallow excavation near by. Defendant slept under a bridge Sunday afternoon and night, went to Los Angeles the next day, and on the third day took a bus to King City, remaining there until arrested May 8, 1947. There is evidence that when arrested the defendant denied being in El Monte or knowing the deceased. Later defendant made a statement to the officers which was in substantial conformity with the testimony at the trial.

On this appeal it is contended that "the verdict of the trial court finding the defendant guilty of the crime of manslaughter is contrary to and unsupported by the evidence," and that such verdict "is contrary to the law." The gist of appellant's argument is that "Where the undisputed evidence shows that the deceased had attacked the defendant with a knife and had shortly prior thereto attacked the defendant with a bottle, the defendant was justified in defending himself and even taking the life of the aggressor where

there is no evidence of undue advantage.'' In this connection appellant claims that ''the evidence presented in behalf of the people in itself proves that the conduct of the defendant toward the deceased was that conduct defined in Section 197 of the Penal Code and for which there is no criminal responsibility,'' and that under section 1105 of that code, ''there was no necessity for the defendant to present any evidence in his own behalf.''

Section 1105 of the Penal Code provides that ''the burden of proving circumstances of mitigation, or that justify or excuse it (the homicide) devolves upon him (the defendant), *unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable.*'' (Italics added.) The respondent insists that ''The evidence is sufficient to sustain the judgment, as a matter of law and fact, and that the trial court did not err in denying defendant's motion for a new trial.''

Justifiable homicide, as defined in section 197 of the Penal Code, includes homicide committed ''1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or, 2. When committed in defense of habitation, property or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony,'' etc.; ''or 3. When committed in the lawful defense of such person . . . when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, . . . if he was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed.''

█ The right of necessary self-defense, long recognized and protected by the law, obviously deals with an emergency situation in which a certain degree of elasticity is essential if the defense is to be of any practical value to the person assaulted. For example, it is well established that reasonably apparent danger, as distinguished from actual danger, may be sufficient to justify a killing in self-defense. █ Likewise, as appellant's brief points out, the defense need not be proved beyond a reasonable doubt or even by a preponderance of the evidence. In the language of *People* v. *Carson,* 43 Cal. App.2d 40, 44 [110 P.2d 98], ''it is necessary only that de-

fendant produce evidence the weight of which is sufficient to create in the minds of the jurors a reasonable doubt as to the existence of the alleged circumstances which justified the homicide." There can, of course, be no doubt that these rules apply as forcibly in a case tried by a judge as in one where a jury is empanelled.

In the instant case, as appellant's brief asserts, "the record is silent of any evidence to bring home to the defendant any violent act committed by him toward the deceased," other than that done in repelling the knife assault of the deceased. "Unless," as appellant says, "we arbitrarily see fit to believe only those words of the defendant's statement and testimony wherein he acknowledges striking the decedent and disbelieve all the rest of his statement and testimony and further disbelieve the testimony of other witnesses as to the circumstances leading up to the blows being struck by Toledo, it cannot be determined that a criminal homicide was committed. The prosecution having presented as a part of its case the statement of the defendant which justified the homicide is bound by that evidence in the absence of proof to the contrary."

In this connection may be noted the case of *People* v. *Salaz,* 66 Cal.App. 173, 181 [225 P. 777], where the court said: "The jury could not have found, from the evidence for the people, that the killing was done by appellant except upon the latter's admissions, which carried, in close and immediate connection with proof of the killing, circumstances of necessary self-defense. . . . No presumption of guilt weighed against the presumption of innocence." So also in *People* v. *Estrada,* 60 Cal.App. 477, 482 [213 P. 67], the court made use of the same doctrine and said: "As the defendant pictured the encounter, no particular interval of time elapsed between the acts of assault committed by deceased until the fatal blow was struck. There was no duty resting upon the defendant to retreat under the circumstances."

From the record herein it is indicated that the previous relations between the deceased and the defendant had been of a friendly nature, but that on the occasion in question the deceased was quarrelsome and threatening; that the deceased inaugurated the difficulty by breaking a wine bottle over the defendant's head; that immediately thereafter the deceased violently assaulted another member of the party, Joe

Lopez, with a knife; that defendant attempted to intervene, whereupon the deceased, as testified to by the defendant on cross-examination, "came toward me with a knife, and then was the time I fell. . . . He came toward me and I picked up the pipe. . . . He turned around and struck at me toward here (indicating the neck). . . . I only got it and told him not to—that I didn't want to fight. He told me he was going to kill me, and then is the time that he struck at me." On direct examination the defendant had previously stated: "I told him that I didn't want to fight, and he still came toward me with the knife, and when I felt that he cut me it was the time when I hit him." As hereinbefore indicated the defendant's jacket showed a knife cut almost entirely across the left side of the jacket, "across the abdomen." The defendant also testified that the deceased struck with the knife "many" times before the jacket cut was made, "but I got away from him." In answer to the inquiry, "You kept backing away from him, did you?," the defendant replied, "Yes, very much."

The following excerpt from appellant's brief, is eminently pertinent: "Can it be reasonably urged that such an attack was not more than sufficient to create in the mind of any reasonable person the very positive belief that the person so assaulted was in great danger of death or sustaining great bodily harm? This was no apparent danger. This was a very real and substantial danger." The record nowhere indicates that the killing was perpetrated "in a spirit of revenge for the assault previously made upon him (defendant) in the shack with a bottle," as suggested by the respondent.

Respondent's brief lays considerable stress upon alleged "incriminating" circumstances such as the fact that after burying the body, defendant fled to King City, and when apprehended more than two months later at first denied knowing the deceased or being in El Monte at the time in question. While doubtless, circumstances of flight, etc., may, in a proper case, furnish some evidence of guilt, particularly where the defendant's identity is in question, in the instant case and as bearing on the issue of self-defense, such facts cannot be deemed indicative of guilt. As appellant's brief suggests, these circumstances may easily be accounted for "as the act of an ignorant, frightened person of Mexican national origin." In the final analysis, defendant's conviction is not supported by the record.

583

The order appealed from is reversed and the cause remanded for a new trial.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied June 3, 1948, and respondent's petition for a hearing by the Supreme Court was denied June 17, 1948. Shenk, J., and Edmonds, J., voted for a hearing.