[Crim. No. 5377.   Second Dist., Div. Three.   Oct. 7, 1955.]

THE PEOPLE, Respondent, v. MARY R. GRIEGO, Appellant.

Ellery E. Cuff, Public Defender, and Richard W. Erskine, Deputy Public Defender, for Appellant.

Edmund G. Brown, Attorney General, and Marvin Gross, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was charged with murder. In a trial by jury she was convicted of manslaughter. She appeals from the judgment and the order denying her motion for a new trial.

Appellant asserts that the evidence was insufficient to support the verdict; and that the court erred in refusing to give three instructions which she requested.

Defendant and Joe Garcia, the deceased, had been living together, unmarried, about two years. On October 10, 1954, about 1 a.m., defendant stabbed him in the heart with a paring knife, and he died soon thereafter. In the evening preceding the stabbing they went to a theater, where they stayed until about 10 p.m. Prior to going there Joe drank beer, and defendant drank whiskey. During the show he drank more beer, and they both drank whiskey from a bottle which she had in her pocket. After the show they went to a liquor store where one Bill Brandt was an employee. Joe went into the store, and she remained in the car. He was in the store about 20 minutes, and he bought six cans of beer. They returned home about 10:30 p.m., and she drank whiskey from the bottle, and Joe drank beer. Then she went to bed (a double bed) and went to sleep. She testified that the next thing she remembered was that she awoke (a few minutes after midnight) and "he was messing around with" her; at that time Joe was on the bed, had his hand on her chest, and was hugging and kissing her; the other fellow's

head [Brandt's head] was between her legs with his mouth on her private parts; Joe asked Brandt if he wanted to have intercourse with her; she tried to kick them, and she told them to get out of there; then Brandt left; Joe tried to get on top of her; she pushed him over, then she went to the kitchen, got the knife and put it on a night stand beside the bed; then they were quarreling and Joe was telling her that he wanted Brandt to come in and do the same thing over again, because he wanted to get satisfaction out of it; Joe said that he could do anything he pleased with her; at that time she was sitting on the side of the bed to the right of Joe, who was lying on his back on the bed (the side of the bed next to the wall) and was holding her left arm with his right hand; he was laughing in a manner that was not normal; she was mad and afraid, because he was laughing at her and telling her that he was going to have Brandt come back—that he wanted Brandt to come in and do the same thing again and that he was going to force her to do it; he grabbed her by the waist; she took the knife from the stand with her right hand and stabbed him; then she put her robe on, yelled for help, called for Brandt, and ran out the back door; at that time she saw Brandt just as he was starting away in his car; she called to him, but he drove away. Then she ran to the boulevard (which was in front of her house) and stopped cars and asked for help, stating that she had. stabbed a man. Two men went with her to her house. Joe was 39 years of age and weighed 165 pounds. She was 36 years of age and weighed 89 pounds.

Two police officers arrived at the house. about 1 a.m. They saw Joe lying on his back on the bed. He appeared to be alive but he did not make a statement. One of the officers asked defendant what happened, and she replied, ''I stabbed him.'' The officer located a knife under a stand and the blade of the knife had wet brownish stains on it. He asked defendant if that was the knife she used, and she replied ''Yes.'' When he asked her to tell the whole story, she said they had been drinking, had attended a show, and on the way home Joe was a little surly; when they arrived home she obtained the knife from the kitchen and placed it in her pocketbook; then, after drinking more beer, they went to bed; the next thing she knew was when ''she was awakened ·by somebody messing around her''; that it was Bill from the liquor store, and she chased him out of the house. She also said that it was about three or four minutes after Bill left that she

decided to take the knife out of her purse. Defendant had a slight odor of alcohol on her breath. Joe was removed in an ambulance about five minutes after the officers arrived. Joe's blood contained .29 alcohol. An autopsy surgeon testified that in his opinion an individual with that amount of alcohol in his blood would be in a high degree of intoxication.

Officer Ortiz testified that he had a conversation with defendant on October 11 (the day after the stabbing) in the presence of Officer Scarce and Mr. Latson, a stenotypist; Mr. Latson took the conversation on a stenotype and the conversation was transcribed. The officer used that transcript to refresh his memory as to the conversation. He testified that in the conversation she said she was the common-law wife of Joe; she had known Brandt about five months, having been introduced to him at the liquor store by Joe. His further testimony as to what she said in the conversation, pertaining to events prior to the time she awoke and pertaining to the conduct of Brandt on that night, was in substance the same as hereinbefore stated with reference to those events and the conduct of Brandt. He also testified that in said conversation he asked her where the knife came from; she replied that she had it in her pocketbook; he asked her why she was carrying the knife in her purse; she replied that Joe's wife was bothering them and she was keeping the knife to defend against Joe's wife, who had said that in every place she caught defendant they were going to have a fight; he (officer) asked her why she stabbed Joe; she replied that she got blind at that time and she did not remember, that she must have gone blind, as mad as she was—she was blinded because Joe was telling her that he enjoyed seeing Brandt do that to her. The officer also testified that in the conversation she said: that, about a week previously, Joe said that he was expecting Brandt to come to the house and leave some whiskey; that when Brandt came Joe opened the door for him, and then, while she was on the bed, Joe began hugging and kissing her; Joe covered her face with a blanket, and she felt somebody sitting beside the bed; when Joe said, "Bill, try to open her legs," she knew it was Brandt; Joe was holding one of her legs, and Brandt was holding the other leg; she began kicking, and Joe told Brandt to leave, and Brandt left. The officer also testified that the defendant said that about a year previously, when she and Joe lived in a trailer, Joe told her that he had brought a fellow home with him and the fellow was in the car, and that he brought

him because the "fellow had given him money to come and use" her. The officer also testified that on October 13, after defendant had read the transcript of said conversation of October 11, she said that she would like to correct the statement in one particular and that was that she should have told them that the reason she stabbed Joe was that he "was attempting to haul back Bill Brandt to do more things to her."

Defendant's testimony regarding the alleged incident when Brandt was sitting on the side of her bed, a week or two prior to the stabbing, was in substance the same as Officer Ortiz' testimony regarding the conversation as to that incident. Also defendant's testimony regarding the alleged incident when Joe brought a man to their trailer home, about a year prior to the stabbing, was in substance the same as Officer Ortiz' testimony regarding the conversation as to that incident.

Defendant's counsel asked her what her state of mind was, at the time she stabbed Joe, with regard to whether or not it was necessary at that time to stab him. She replied that she "was mad for what he had done," and she was afraid because he was going to have Brandt come back. Her counsel then said that he wanted to direct her attention to the question whether or not she thought it was necessary to stab him. She replied, "Yes, it was."

Brandt, called as a witness by defendant, testified in substance the same as defendant had testified with respect to his conduct in her bedroom on the night of the stabbing. He also testified in substance the same as she had testified with respect to his conduct in her bedroom a week or two before the stabbing. He also testified that on the morning of October 10, it took him about half a minute to get out of the house after she told him to get out; that as he was leaving the house he heard Joe laughing; it took him (Brandt) about a minute to go from the house to his car, and it took him a few seconds to start his car and leave.

Appellant contends, as above stated, that the evidence was insufficient to support the verdict. She argues that the evidence of the prosecution and the defense shows that the killing was justifiable. As to the evidence presented by the prosecution, she refers to the conversation between defendant and Officer Ortiz and asserts that statements of appellant in that conversation show justification, and that since the prosecution presented that evidence as a part of its case, it is bound by the exculpatory evidence therein. ▌ The rule is,

as indicated by appellant, that if the prosecution presents as a part of its case a statement of the defendant evidencing justification for the alleged crime, the prosecution is bound by that evidence in the absence of proof to the contrary. (See *People* v. *Toledo,* 85 Cal.App.2d 577, 581 [193 P.2d 953] ; *People* v. *Coppla,* 100 Cal.App.2d 766, 769 [224 P.2d 828].) ▉ In the present case, however, there was evidence that was contradictory of statements made by appellant in the conversation with Officer Ortiz. In that conversation, when asked why she stabbed Joe she replied that she got blind and did not remember, that she must have gone blind, as mad as she was—she was blinded because Joe was telling her that he enjoyed seeing Brandt do that to her. Two days later she made a contradictory statement in telling the officer that she should have said, in the conversation, that the reason she stabbed Joe was that he was attempting to haul back Brandt to do more things to her. When Officer Grant (who arrived at her house within a few minutes after the stabbing) asked her at that time to tell the whole story, she did not make the statement which she later made to Officer Ortiz about not remembering and about going blind because Joe was telling her he enjoyed seeing Brandt do that to her. She told Officer Grant that she and Joe had been drinking, that on the way home from the show Joe was a little surly, that when they arrived home she got the knife from the kitchen and put in her pocketbook, that when she awoke Brandt was messing around her and she chased him out of the house. As a witness herein, testifying as to events immediately before the stabbing, she said she was mad "for what he had done" and was afraid, because Joe was laughing at her and telling her he was going to have Brandt come back and do the same thing again; and that when Joe, who was lying on his back in bed, grabbed her by the waist she stabbed him. Also she made contradictory statements as to when she got the knife, and where she kept it before the stabbing. In the statement made to Officer Ortiz she said she was carrying the knife in her pocketbook in order to defend against Joe's wife. She told Officer Grant that she got the knife from the kitchen after they returned from the show and she put it in her pocketbook. As a witness, she said that after Brandt had left on October 10 (the night of the stabbing) she went to the kitchen, got the knife and put it on a night stand beside the bed. It thus appears that there was much evidence which was contradictory of

the statements made by appellant to Officer Ortiz, and that
the prosecution was not bound by the alleged exculpatory
statements in the conversation with that officer. The appellant
admitted that she stabbed and killed Joe. The question as
to whether the killing was justifiable was a question of fact
for the jury. The various conflicting statements of appellant
were, of course, material matters to be considered in deter-
mining the facts. With respect to her claim that it was
necessary to kill Joe in order to prevent a violation of section
288a of the Penal Code by Brandt, it is to be noted that
Brandt was not in the room at the time she stabbed Joe,
and that Brandt left the room immediately when, theretofore,
she had told him to leave. According to two of her versions
of the matter of getting the knife, she did not get the
knife in order to prevent the violation of any law by Brandt,
but she had the knife in her pocketbook prior to the time
Brandt came to the house on the night of the stabbing. At
the time of denying the motion for a new trial, the trial
judge commented that if the jury had returned a verdict
of acquittal, it would have been contrary to the evidence
because the defendant's own story showed that she was guilty
of manslaughter or second degree murder, and he thought
the evidence would sustain a conviction of second degree
murder. ■ "The test on appeal is whether there is sub-
stantial evidence to support the conclusion of the trier of
fact. It is not whether guilt is established beyond a reasonable
doubt." (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d
911].) ■ The evidence was sufficient to support the
verdict and judgment herein.

■ Appellant contends that the court erred in refusing
to give her requested instruction No. 322-A (Alternate)
which stated: "A person who without fault on his part is
exposed to a sudden felonious attack need not retreat. In
the exercise of his right of self-defense he may stand his
ground and defend himself by the use of all force and means
apparently necessary and which would appear to be necessary
to a reasonable person in the same situation and with the
same knowledge; and he may pursue his assailant until he
has secured himself from danger if that course likewise
appears reasonably necessary. This law applies even though
the assailed person might more easily have gained safety
by flight or by withdrawing from the scene." There was no
evidence that appellant, at the time of the stabbing, was

exposed to a sudden felonious attack. She testified that Joe was not hurting her or trying to hurt her at the time of the stabbing and that he had not hurt her that evening. Her claim, at the trial was in effect that she stabbed Joe in order to prevent an act, in violation of said section 288a, being performed on her by a third person, Brandt, who was not present when she did the stabbing. It was not error to refuse that instruction.

█ Appellant also contends that the court erred in refusing to give her requested instruction No. 26 which stated: "If the evidence in this case [as to any particular count] is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt. . . ." Appellant cites cases wherein it has been held that such an instruction was "correctly" given, or was "eminently proper," or that "Generally speaking" a defendant is entitled to such an instruction. In *People* v. *Hardeman*, 94 Cal.App.2d 51 [210 P.2d 283], where such an instruction as No. 26 was refused, it was held (p. 55) that, under the instructions there given, the jury was sufficiently instructed regarding circumstantial evidence. In the present case the jury was given a proper instruction as to reasonable doubt wherein it was stated, among other things, that: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal. . . ." The jury was also instructed: "Two classes of evidence are recognized and admitted in courts of justice, upon either or both of which, juries lawfully may base their findings, whether favorable to the People or to the defendant, provided, however, that to support a verdict of guilt, the evidence, whether of one kind or the other or a combination of both, must carry the convincing quality required by law, as stated in my instructions." Immediately following that instruction, and as a part thereof, circumstantial evidence and direct evidence were properly defined. Also the jury was instructed that: "I instruct you further that you are not permitted, on circumstantial evidence alone, to find the defendant guilty of [any] crime charged against her unless the proved circumstances not only are consistent with the hypothesis that the

defendant is guilty of the crime, but are irreconcilable with any other rational conclusion.'' The instructions which were given sufficiently covered the principles of circumstantial evidence. In view of the instructions that were given, the refusal to give instruction No. 26 was not prejudicial error.

■ Appellant also contends that the court erred in refusing to give a certain instruction, requested by her, regarding the burden of proof. The jury was instructed that: ''If from the evidence in this case you should have a reasonable doubt whether or not the killing of Joseph Flores Garcia by the defendant was justifiable under the law as stated to you in my instructions, your verdict must be that the defendant is not guilty.'' Appellant had requested that the instruction be modified by adding thereto, at the beginning, the following words: ''There is no burden on the defendant in this case to prove beyond a reasonable doubt, or by a preponderance of the evidence that her act in stabbing the deceased was justifiable. You are instructed in this respect that [here follows the instruction last above quoted, which begins ''If from the evidence . . .''].'' Appellant concedes that the instruction which was given stated a correct principle of law, and that to the trained legal mind the two instructions convey the same meaning. She argues, however, that it did not sufficiently inform a lay jury, in terms understandable by it, on an issue vital to the decision in the case. An instruction was given which stated, in part, that: ''Homicide is justifiable when committed by any person in any of the following cases: 1. When resisting any attempt to commit a felony; 2. When committed in defense of person against any who manifestly intends or endeavors, by violence or surprise, to commit a felony; 3. When committed in the lawful defense of a person when there is reasonable ground to apprehend a design to commit a felony. . . .'' Also a proper instruction was given which stated when a homicide was justified and not punishable. In view of all the instructions it was not prejudicial error to refuse to give the modified instruction requested by appellant.

The judgment, and the order denying the motion for a new trial, are affirmed.

Shinn, P. J., and Vallée, J., concurred.