[Crim. No. 5742.   In Bank.   Nov. 22, 1955.]

THE PEOPLE, Respondent, v. RUBEN CORRALES
ACOSTA, Appellant.

Ellery E. Cuff, Public Defender (Los Angeles), William H. Sanson and Noel B. Martin, Deputy Public Defenders, for Appellant.

Edmund G. Brown, Attorney General, and Marvin Gross, Deputy Attorney General, for Respondent.

SCHAUER, J.—Defendant was charged by information in count 1 with grand theft of an automobile (Pen. Code, § 487, subd. 3), in count 2 with violation of section 503 of the Vehicle Code,[1] and in counts 3 and 4 with manslaughter (Pen. Code, § 192).[2]  A jury found defendant not guilty of count 1 and guilty of counts 2, 3, and 4.  Defendant appeals from the judgment as to count 2.

Defendant contends: (1) the evidence of the prosecution establishes defendant's want of criminal intent; (2) refusal of defendant's requested instruction as to misfortune and accident was prejudicial error; (3) even if defendant had not requested such instruction, it was the trial court's duty of its own motion to instruct on the subject.  We have concluded that contention (1) is without merit; that contention (2) requires reversal; and that contention (3) need not be discussed.

### Evidence of Guilt

The events which resulted in this prosecution occurred on April 3, 1954.  Defendant, a Mexican agricultural worker legally in the United States, could not speak English.  He had been in this country since March 19, 1954.  On April 3 defendant went with fellow workers to a café in Torrance.  Defendant drank five or six bottles of beer.  He and an acquaintance then went to a café in Redondo Beach.  There defendant drank no more.  He began to dance by himself.  The proprietor, who spoke Spanish, led him out of the café.  Defendant left politely.  However, he returned and again danced by himself.  A waitress called the police and the proprietor called a cab for defendant.  The proprietor interpreted for the police and defendant.  When the cab arrived the police directed the driver to take defendant to the ranch where defendant was employed, and explained that defendant had no money but that the fare would be paid at the ranch or by the proprietor of the café.

After the cab driver had driven defendant for a few

---

[1]Count 2 alleges that defendant "did willfully, unlawfully and feloniously drive and take a certain vehicle . . . without the consent of and with intent to deprive the . . . owner .·. . of title to and possession of said vehicle."

[2]Counts 3 and 4 allege that defendant "did willfully, unlawfully and feloniously and without malice, while engaged in the driving of a vehicle in the commission of an unlawful act not amounting to a felony, with gross negligence, and while in the commission of a lawful act which might produce death, in an unlawful manner, with gross negligence, kill" two named human beings.

minutes, defendant spoke to him in Spanish, which the driver did not understand. About a year before a passenger had attempted to rob the driver and the driver had escaped by opening the door and rolling out of the cab; he recalled this incident and it influenced his conduct when defendant began to behave strangely as hereinafter described. Defendant denied any violent conduct and testified that his purposes were innocent; the following description of the events is taken from the testimony of prosecution witnesses.

When the driver did not comprehend defendant's Spanish, defendant reached into the front seat of the cab, seized the driver's clip board and struck the driver. The driver struck at defendant with his flashlight. Defendant pinned the driver's arm back and struck at his neck with defendant's hand. The driver avoided the blow, opened the cab door, and rolled out. He had slowed to 10 or 15 miles an hour and pulled to the left side of the road. He left the car in high gear and did not turn off the ignition switch.

Other persons on the highway observed that the cab slackened speed, the passenger stood over the driver striking him, the driver rolled out of the car, the passenger got from the back seat into the front seat behind the wheel, the cab accelerated to about 60 miles an hour, ran through a red light, and hit another car broadside.

According to defendant's testimony and extrajudicial statements, he did not hit the driver with the clip board and did not get into the front seat of the cab, but attempted to steer it by reaching over the back of the front seat to the wheel. However, a prosecution witness observed that when the cab came to rest defendant was in the front of the car, having been partially thrown to the floor, with his hips on the seat beneath the steering wheel and his head to the right.

Two passengers in the car which was struck by the cab were killed and the driver was seriously injured. Defendant was assisted from the cab. His right arm was injured. He got into another automobile, in which the driver had left the keys, and attempted unsuccessfully to start it. The police then removed defendant from the automobile.

Defendant concedes that if the People's case consisted solely of the testimony of the cab driver and other prosecution witnesses as summarized above, criminal intent could be inferred from defendant's conduct. But, says defendant, the People's case in chief included "primary and direct" proof of defendant's state of mind by a transcript of an extra-

judicial statement of defendant to a police officer which assertedly ''explicitly disproves criminality.''

In the questioning of defendant as to his previous statements to another officer, the following was said: ''Captain Ashton: You told Officer Gonzales that the taxi driver was going to rob you.

''The Defendant: I said that but I did not mean that at the time as there are lots of crimes happening in that manner and that as he was going in the wrong direction I thought something might happen to me.''

This statement, defendant says, establishes that his intent and purpose during the events leading up to and immediately following the driver's abandonment of the cab were not to deprive the owner of the cab of possession thereof. Defendant relies upon what he considers to be an analogous situation in *People* v. *Salaz* (1924), 66 Cal.App. 173, 181 [225 P. 777]. There defendant, charged with murder, admitted the killing but claimed that it was in necessary self-defense. A jury found him guilty of manslaughter and he appealed. The appellate court said (p. 181 of 66 Cal.App.):

''The jury could not have found, from the evidence for the people, that the killing was done by appellant except upon the latter's admission, which carried, in close and immediate connection with proof of the killing, circumstances of necessary self-defense. Since, therefore, the proof on the part of the prosecution tends to show that the act of appellant was justifiable, there was, at the close of the people's case, no presumption against the accused that he had committed an unlawful homicide. No presumption of guilt weighed against the presumption of innocence. 'Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, *unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable.'* (Pen. Code, § 1105.) [Italics of the District Court of Appeal.]

''But it does not necessarily follow that appellant's account of the killing, though uncontradicted by direct evidence, should control the jury. If there be any well-established circumstance in the case which may reasonably be regarded as incompatible with the theory of the defense that the killing was justifiable, then the jury, from a consideration

of all the evidence, was warranted in finding that the act amounted to an unlawful homicide.''

The court concluded (p. 183 of 66 Cal.App.) that ''if it cannot be said, as a matter of law, that the evidence in this case is insufficient to support the verdict, the question is a close one,'' and that certain error was prejudicial.

Cited by defendant to the same effect are *People* v. *Toledo* (1948), 85 Cal.App.2d 577, 580-581, 582 [193 P.2d 953] [where the appellate court concluded that ''In the final analysis, defendant's conviction is not supported by the record,'' which according to the appellate court established justifiable homicide] ; and *People* v. *Estrada* (1923), 60 Cal.App. 477, 482-483 [213 P. 67] [where ''The proof on the part of the prosecution (referring now to the statement of the defendant) did . . . show a case of justification, and there is nothing in any of the other evidence presented which tends to contradict or dispute defendant's version of the affair'']. Defendant says, paraphrasing the second sentence quoted above from the Salaz case, that ''since the proof on the part of the prosecution shows that the intent in the mind of appellant was non-criminal, there was at the close of the People's case no presumption that appellant had either attempted to rob the cab driver or wrongfully and without his consent taken possession of and operated the cab.''

The sentence in the Salaz case which, according to defendant, should be applied to the present case, does not stand for a rule of law that a defendant cannot be convicted if the prosecution introduces *some* evidence which tends to prove that defendant did not act in the manner or have the state of mind which is necessary to constitute a crime and there is other evidence sufficient to show guilt. As the Salaz case itself indicates, if there is prosecution evidence which tends to disprove criminality and other prosecution evidence which tends to prove criminality, it is the function of the trier of fact to determine which version is to be believed. (See *People* v. *Freudenberg* (1953), 121 Cal.App.2d 564, 575-576 [263 P.2d 875] ; *People* v. *Rutland* (1953), 120 Cal. App.2d 798, 800 [261 P.2d 735] ; *cf. People* v. *Howard* (1930), 211 Cal. 322, 329-330 [295 P. 333, 71 A.L.R. 1385] ; *People* v. *Holt* (1944), 25 Cal.2d 59, 90-93 [153 P.2d 21].) The courts may sometimes say that the prosecution is ''bound by'' extrajudicial statements of defendant which are introduced by the prosecution and which are irreconcilable with guilt, but this concept is applicable only where there is no other

competent and substantial evidence which could establish guilt. (See *People* v. *Jacobs* (1952), 111 Cal.App.2d 281, 283 [244 P.2d 500] ; *People* v. *Coppla* (1950), 100 Cal.App. 2d 766, 769 [224 P.2d 828].)

### *Failure to Instruct as to Misfortune and Accident*

█ Defendant relies upon the provision of section 26 of the Penal Code that ''All persons are capable of committing crimes except those belonging to the following classes: . . . Six. Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence.'' He asserts that ''Through the abandonment of the cab, something wholly unforeseen, appellant found himself, suddenly and with no criminal intent, the sole occupant of a vehicle in motion, in gear, with the motor running. All he did was the natural reaction of one unfamiliar with the operating technique of the vehicle.'' It is defendant's position that the refusal of the following instruction requested by him deprived him of the opportunity to have this important aspect of the evidence properly appraised by the jury: ''When a person commits an act or makes an omission through misfortune or by accident under circumstances that show no evil design, intention or culpable negligence, he does not thereby commit a crime, although the same act or omission committed under different circumstances and coupled with criminal intent would constitute a crime.'' (California Jury Instructions—Criminal (1946), No. 71-E.)

The People reply that the theory to which this instruction relates was unsupported by any substantial evidence and therefore that the refusal of the instruction was not error. The People refer to the testimony of prosecution witnesses that after the cab driver rolled out of the cab the vehicle accelerated while it was going up a slight grade and that the vehicle could not have done this had it been simply idling in high gear, as the cab driver left it; this testimony, the People say, refutes defendant's testimony that he did not ''drive'' the cab but merely leaned over the seat and attempted to steer it. Even if the jury disbelieved defendant's testimony that he did not get into the front seat, they still could have found that what appeared to others to be a ''driving'' of the car was not with intent to drive or take it but was the mere unintended, confused result of the peculiar situation in which defendant found himself. For example,

the jury could have found that defendant tried to stop the car and through ignorance or mistake put his foot on the accelerator instead of the brake. In the state of the evidence defendant was entitled to his requested instruction as to accident or misfortune.

The People urge that in any event the refusal of the instruction was not prejudicial because the jury were fully instructed as to the intent necessary to constitute a criminal taking of a car in violation of section 503 of the Vehicle Code and would not have convicted defendant had they not found that defendant had such intent. However, defendant was entitled to the instruction as to accident and misfortune in the terms or substance in which he requested it so that the jury's attention would be directed to the possible, reasonable view of the evidence urged by defendant. (See *People v. Carmen* (1951), 36 Cal.2d 768, 773 [228 P.2d 281].)

The foregoing discussion and our conclusion make it unnecessary to consider defendant's contention that the trial court of its own motion should have instructed as to accident and misfortune.

For the reasons above stated, the judgment appealed from is reversed.

Gibson, C. J., Carter, J., and Traynor, J., concurred.

SPENCE, J.—I dissent.

Defendant was convicted of two counts of manslaughter and of one count of violation of section 503 of the Vehicle Code. He appeals only from the judgment relating to the last-mentioned count. The majority opinion holds that the evidence was sufficient to support the judgment as to that count, but reverses solely because of alleged prejudicial error in the failure to give a requested instruction. After a review of the record, including the evidence, I am of the opinion that it cannot be said that the error, if any, in the failure to give the requested instruction "resulted in a miscarriage of justice." (Const., art. VI, § 4½.)

The information charged that defendant "did wilfully, unlawfully and feloniously drive and take a certain vehicle . . . without the consent of and *with the intent* to deprive the . . . owner . . . of title to and possession of said vehicle. . . ." (Emphasis added.) The trial court instructed the jury that "Any person who drives or takes a vehicle not his own, without the consent of the owner thereof, and *with*

*intent* to either permanently or temporarily deprive the owner thereof of his title to or possession of such vehicle, . . . is guilty of a felony." (Veh. Code, § 503; emphasis added.) The jury was further given the customary general instructions, including those on the presumption of innocence, reasonable doubt, and burden of proof. Upon the evidence and under these instructions, the jury found defendant "guilty of violation of section 503, Vehicle Code, a felony, as charged in count two of the information."

It is clear that the given instructions clearly informed the jury that defendant could not be found guilty unless the jury found from the evidence and beyond a reasonable doubt that defendant drove the automobile with the required criminal intent. Thus, in finding the defendant guilty, the jury necessarily found that defendant had the specific criminal intent mentioned in said section and alleged in the information; and the overwhelming evidence supports that finding.

It is true that defendant told an unusual story concerning the events immediately preceding the fatal accident, but his explanation cannot be reconciled with his great acceleration of the speed of the car and of his traveling at such speed for almost a mile before the accident occurred. Defendant's criminal intent was further indicated by his attempt unlawfully to take another automobile for the purpose of fleeing from the scene of the accident.

The refused instruction reads: "When a person commits an act or makes an omission through misfortune or by accident *under circumstances that show no evil design, intention or culpable negligence,* he does not thereby commit a crime, although the same act or omission committed under different circumstances and *coupled with criminal intent* would constitute a crime." (Emphasis added.)

A reading of the refused instruction shows that it constitutes, in effect, another way of stating the propositions of law relating to intent which were amply covered by the instructions given. By its terms, it could have no application unless it was found that defendant drove the car under circumstances showing no evil "intention" and in a manner not "coupled with criminal intent."

In the light of the fact that the given instruction made it entirely clear that defendant could not be convicted unless the jury found beyond a reasonable doubt that he drove the car "with intent to either permanently or temporarily de-

prive the owner thereof of his title or to possession of such vehicle,'' I find no prejudicial error in the failure to give the requested instruction.

I would therefore follow the constitutional mandate (Const., art. VI, § 4½) and affirm the challenged judgment.

Shenk, J., and Edmonds, J., concurred.

Respondent's petition for a rehearing was denied December 21, 1955. Shenk, J., Edmonds, J., and Spence, J., were of the opinion that the petition should be granted.