[Crim. No. 4089.   First Dist., Div. Two.   Nov. 26, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES E. MERCER, Defendant and Appellant.

Douglas G. Cowan and Willard E. Stone for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

SHOEMAKER, J.—Defendant Charles Mercer appeals from a conviction of murder in the second degree.

Early in the morning of May 9, 1961, defendant Mercer, an ex-Marine employed as a Fuller Brush salesman, walked into the sheriff's office in Salinas, California, and stated that he had killed a man. He told where the body was located and accompanied several officers to the scene. At the site, the officers found an expended bullet in the center of a large

bloodstain on the nearby roadway. A trail of blood, bent grass and weeds led to a point about 29 feet north of the bloodstain, where lay the body of a man subsequently identified as Frank Barrios, who had been shot once in the heart and once in the head. Laboratory examination developed the deceased had a blood-alcohol level of .240, which is ordinarily indicative of a high state of intoxication. Death was caused by the bullet which passed through his heart.

While still at the scene (the intersection of the Boronda and Castroville highways) defendant Mercer gave the sheriff's officers a statement, which was tape-recorded and subsequently played at the trial. The defendant stated that at 7 or 8 p. m. on the preceding evening, he had stopped at a tavern in Castroville and there struck up a conversation with two men seated near him at the bar. The defendant stated that one of the men was a sergeant first class and that they began discussing their military experiences. The sergeant subsequently left the bar, and Barrios came over and stated that he had overheard the conversation, and that he had been in the paratroopers.

According to the defendant, the three men continued conversing at the bar until shortly before 12, when the proprietor closed the tavern. At that time, Barrios and the defendant decided to go to a bar in Salinas. Although Barrios said that he had a car, the defendant suggested that they go in his car because he was concerned about safeguarding certain Fuller Brush merchandise which he kept there. The two men then drove to Salinas in the defendant's car and visited several bars. During the course of the evening, the defendant talked about the collections he had made for the Fuller Brush Company in the past two days. He stretched the amount a bit in talking and informed Barrios that he had collected an amount equal to all of the merchandise he had sold during the past week. He also told Barrios that he would have to go down to the bank and open a business account in which to deposit his collections.

Thereafter, at approximately 2 a. m., the two men got into the defendant's car and headed back toward Castroville. When they reached a point on the highway near the intersection with Boronda Road, Barrios asked the defendant to pull over to the side so that he could get out and urinate. When the defendant stopped the car, Barrios got out and informed the defendant that he had a "weapon" and that he

was going to get the defendant's money. When the defendant asked Barrios what he wanted him to do, Barrios told him to get out and give him his money. The defendant kept a gun in the glove compartment of his car because it made him feel safer when he or his wife were out collecting for the Fuller Brush Company. When Barrios told him to get out of the car, the defendant began sliding across the seat and reached up and opened the glove compartment. Barrios then jumped a little bit and asked the defendant what he was doing. The defendant replied that he was getting what Barrios was after. He then reached into the glove compartment with both hands and pulled at random. He grasped an envelope containing his automobile instruction manual in his left hand, pulled it out, and told Barrios, "I got it here. Move, so I can get out." Defendant's right hand was on the gun. As Barrios half-turned to let him out, the defendant dropped the envelope in his left hand, jacked a shell into the chamber of the gun, pointed it in Barrios' direction, and pulled the trigger. Barrios fell down on his stomach and then raised up again on his elbows, yelling something indistinguishable. The defendant, upon seeing this movement, believed that Barrios was not disabled and was still able to harm him. He therefore fired again from his position halfway across the seat. He then found his flashlight and got out of the car. He searched Barrios but was unable to find a weapon. In his statement to the sheriff's officers, the defendant said: "In my mind all this time he had a gun because he said a weapon. That's what entered my mind. He said a weapon and that scared me. If he'd had a gun, in my mind it would've been self defense, if he'd had a gun, I'd have turned around and I'd went in to the police department and brought them out and it would've been settled. But he didn't have a gun and I was scared. I'd shot a man that didn't have anything." The defendant then became frightened, dragged Barrios' body off the road, drove home, and told his wife what he had done. After calling his brother in Martinez, he drove to the Salinas sheriff's office.

In addition to the May 9 statement summarized above, the defendant gave the sheriff's officers an additional tape statement on the morning of May 10. At that time, the highway patrol had just discovered Barrios' wallet alongside the Castroville Road roughly one mile north of the Boronda intersection. Upon being questioned about the wallet, the defendant at first stated that he had found it on the seat of the

car as he was driving home and that he had thrown it out of the car window. He stated that he did not know how it got on the seat unless it fell out of Barrios' pocket sometime during the evening. Upon further questioning, however, the defendant admitted that he had removed the wallet from Barrios' body after discovering that he had no weapon. He stated that he removed nothing from the wallet, but that he threw it from the car window to prevent anyone from connecting him with Barrios.

The defendant's testimony at the trial was entirely in accord with his out-of-court statements. He consistently maintained that Barrios had said he had a weapon. He stated that he believed Barrios was holding a gun outside the car door and that he fired out of fear and in order to protect himself.

The evidence produced by the prosecution consisted of the defendant's two tape-recorded statements and the testimony of witnesses who had seen the defendant and Barrios in various Salinas bars on the night of May 8. There was also evidence that defendant's wife had told a sheriff's officer that her husband was despondent over sales in his Fuller Brush territory and was thinking of seeking other employment.

At the conclusion of the trial, the jury found the defendant guilty of second degree murder. Judgment was entered accordingly.

Appellant now contends that the evidence is insufficient as a matter of law to support his conviction. Appellant asserts that the prosecution produced no direct evidence as to the manner in which the killing occurred other than his two out-of-court statements. It is his position that the prosecution, having introduced these statements into evidence, was bound by his version of the killing in the absence of circumstantial evidence showing that it could not have occurred in the manner described by him.

Penal Code, section 1105, provides as follows: "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, *unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable.*" (Emphasis added.) ■ Appellant contends that, in the instant case, the proof on the part of the prosecution, since consisting largely of his own statements to the sheriff's officers, tended

to show that the homicide was justifiable or, at most, manslaughter. Under such circumstances, the prosecution retained the burden of showing that appellant acted with the malice essential for a conviction of second degree murder. Appellant asserts that the prosecution produced no such evidence.

In *People* v. *Griego* (1955) 136 Cal.App.2d 51, 55-56 [288 P.2d 175], the court stated the rule as follows: ". . . if the prosecution presents as a part of its case a statement of the defendant evidencing justification for the alleged crime, the prosecution is bound by that evidence in the absence of proof to the contrary."

In *People* v. *Toledo* (1948) 85 Cal.App.2d 577 [193 P.2d 953], the defendant had asserted, both in his testimony at the trial and in an out-of-court statement to the police, that he had killed the deceased in self-defense. He admitted that he had struck the deceased twice with a piece of pipe, but maintained that he had done so to ward off a knife attack by the deceased. On appeal from a manslaughter conviction, the defendant contended that the prosecution's evidence, which included his statement to the police, tended to show that the homicide was justifiable. He therefore urged that there was no necessity, under Penal Code, section 1105, for him to produce any evidence on his own behalf. The appellate court accepted this argument and reversed the manslaughter conviction, stating: "In the instant case, as appellant's brief asserts, 'the record is silent of any evidence to bring home to the defendant any violent act committed by him toward the deceased,' other than that done in repelling the knife assault of the deceased. 'Unless,' as appellant says, 'we arbitrarily see fit to believe only those words of the defendant's statement and testimony wherein he acknowledges striking the decedent and disbelieve all the rest of his statement and testimony and further disbelieve the testimony of other witnesses as to the circumstances leading up to the blows being struck by Toledo, it cannot be determined that a criminal homicide was committed. The prosecution having presented as a part of its case the statement of the defendant which justified the homicide is bound by that evidence in the absence of proof to the contrary.' " (P. 581.)

In *People* v. *Salaz* (1924) 66 Cal.App. 173 [225 P. 777], the People's evidence included a statement by the defendant that the deceased had attacked him with a club and he had fired five shots in self-defense. In reversing a manslaughter conviction, the court stated: "The jury could not have found,

from the evidence for the people, that the killing was done by appellant except upon the latter's admissions, which carried, in close and immediate connection with proof of the killing, circumstances of necessary self-defense. Since, therefore, the proof on the part of the prosecution tends to show that the act of appellant was justifiable, there was, at the close of the people's case, no presumption against the accused that he had committed an unlawful homicide. No presumption of guilt weighed against the presumption of innocence.'' (P. 181.)

Again, in the recent case of *People* v. *Collins* (1961) 189 Cal. App.2d 575 [11 Cal.Rptr. 504], the court reversed a manslaughter conviction based on evidence very similar to that in the instant case. In reversing the conviction for manslaughter, the court held that the defendant's out-of-court statement, which was presented as part of the prosecution's case, showed only that the defendant had acted in self-defense. The court pointed out that justification does not depend on the existence of actual danger but on appearances. (See *People* v. *Miles* (1880) 55 Cal. 207, 209-210.) ██ ''Where from the nature of the attack a person, as a reasonable man, is justified in believing that his assailant intends to commit a felony upon him, he has a right in defense of his person to use all force necessary to repel the assault. . . .'' (P. 588.)

· The court went on to state that the prosecution had introduced no evidence that the killing had occurred in any other manner than that described in the defendant's statement. There was no evidence of any motive other than self-defense and no evidence that the defendant had ever been the instigator of any difficulty with the deceased. ██ The court stated: ''The prosecution, having presented as a part of its case the statement of defendant as to how the killing occurred, is bound by that evidence in the absence of proof to the contrary. (*People* v. *Coppla*, 100 Cal.App.2d 766, 769 [224 P.2d 828].) ██ If there be any well-established circumstance which may be reasonably regarded as incompatible with the theory that the killing was justifiable, the trier of fact, from a consideration of all the evidence, is warranted in finding that the act amounted to an unlawful homicide. (*People* v. *Acosta*, 45 Cal.2d 538, 541 [290 P.2d 1].) We find nothing in defendant's statement or in the other evidence which may be reasonably regarded as incompatible with the theory that the killing was justifiable. [P. 591.]

''·  ·  ·  ·  ·  ·  ·  ·  ·  ·

"Under the evidence, the acts of Whiteside gave defendant reasonable grounds to believe that Whiteside was about to commit a felony (Pen. Code, § 286), and that there was imminent danger of its being accomplished. We hold the evidence establishes as a matter of law that the homicide was justifiable. [Pp. 592-593.]''

In the present case, appellant's version of the homicide was not inherently improbable. Indeed, we cannot perceive any motive for the killing *other* than self-defense. Appellant's statement that he had never met the deceased until the evening of May 8 was not contradicted; that he and the deceased had visited several bars in Salinas was corroborated by the People's own witnesses; and there was no evidence or intimation of any quarrel or altercation between appellant and the deceased.

Although it is arguable that some evidence of motive was provided by the testimony indicating that appellant was despondent over his job and was contemplating a change of employment, it must be noted that the defendant in the *Collins* case, *supra,* was unemployed and without sufficient funds to buy food. Yet the court there stated that there was no evidence of any motive other than self-defense.

On argument, respondent admits that the only ground that exists for a first degree murder conviction is to be found in the contention that the homicide resulted while appellant was committing the felony of robbery and that the evidence in support thereof is very weak; and, that there is no evidence that would support a finding of express malice on appellant's part.

Respondent also agrees that the court completely and correctly instructed the jury as to first degree murder, second degree murder, and manslaughter. These instructions included the statutory definition of malice aforethought, and spelled out for the jury that murder which is perpetrated by any kind of wilful, deliberate and premeditated killing was murder of the first degree; that the killing must be accompanied and must be preceded by a clear, deliberate intent to take life, an intent to kill which must be the result of deliberation and premeditation; that if the unlawful killing is done with malice aforethought and is committed in the perpetration or attempt to perpetrate robbery, it is also murder of the first degree; that if the unlawful killing is done with malice aforethought but without deliberation and premeditation and is not committed in the perpetration or attempt to perpetrate robbery, then the offense is murder in the second degree.

█ After being so instructed, the jury returned its verdict, finding appellant guilty of second degree murder, thus impliedly finding that the killing did not take place during the perpetration of a robbery by the appellant of the decedent. The result of this implied finding was to acquit the appellant of the charge of first degree murder, thus precluding any subsequent trial of appellant on such charge. (*Gomez* v. *Superior Court* (1958) 50 Cal.2d 640 [328 P.2d 976], and cases therein cited.)

Respondent, in urging that the judgment be affirmed, contends that appellant's alleged fears did not justify his course of action, and that appellant is guilty of using excess and unreasonable force in defending his person and property. Such argument fails to find any support in the record.

█ Although it is true that appellant fired two shots at the deceased, the rule is well established that one who, without fault, is placed under circumstances sufficient to excite the fears of a reasonable man that another designs to commit a felony or some great bodily injury and to afford grounds for a reasonable belief of imminent danger, may act upon those fears alone and may slay his assailant and be justified by appearances. (*People* v. *Hecker* (1895) 109 Cal. 451, 462-463 [42 P. 307, 30 L.R.A. 403] ; *People* v. *Dawson* (1948) 88 Cal. App.2d 85, 96 [199 P.2d 338] ; *People* v. *Ranson* (1953) 119 Cal.App.2d 380, 387-388 [259 P.2d 910].) █ ''Where the peril is swift and imminent and the necessity for action immediate, the law does not weigh in too nice scales the conduct of the assailed and say he shall not be justified in killing because he might have resorted to other means to secure his safety.'' (*People* v. *Collins, supra*, at p. 589 ; *People* v. *Hecker, supra*, at p. 467.) Furthermore, it must be remembered that the defendant in the *Toledo* case, *supra*, struck the deceased twice. In the *Salaz* case, *supra*, the defendant fired five shots at the deceased. In the *Collins* case, the deceased was struck repeatedly by the defendant. Yet all three decisions resulted in the reversal of a manslaughter conviction. █ In the instant case, appellant was convicted of second degree murder, a crime requiring malice aforethought. (Pen. Code, §§ 187, 189 ; *People* v. *McAuliffe* (1957) 154 Cal.App.2d 332, 338 [316 P.2d 381] ; *People* v. *Todd* (1957) 154 Cal.App.2d 601, 608 [317 P.2d 40] ; *People* v. *Wallace* (1934) 2 Cal.App.2d 238, 240 [37 P.2d 1053].) Appellant's statement, which was presented as part of the case for the prosecution, showed that he killed the deceased in order to prevent the commission of a felony

(Pen. Code, § 211) and in order to avoid serious bodily injury. We are satisfied that the prosecution produced no evidence which can reasonably be viewed as incompatible with appellant's version of the killing.

The argument that appellant showed a "consciousness of guilt" by moving the body and disposing of the deceased's wallet is tenuous. In *People* v. *Toledo, supra,* the defendant had buried the body and fled to King City. When apprehended by the police more than two months later, he at first denied knowing the deceased and stated that he had been out of town when the homicide occurred. The court stated: "While doubtless, circumstances of flight, etc., may, in a proper case, furnish some evidence of guilt, particularly where the defendant's identity is in question, in the instant case and as bearing on the issue of self-defense, such facts cannot be deemed indicative of guilt." (P. 582.) Appellant's statement and testimony constituted the only direct evidence of how the killing occurred. It is our opinion that the circumstantial evidence produced by the prosecution cannot be deemed inconsistent with his version of the homicide. In *People* v. *Hatchett* (1944) 63 Cal.App.2d 144, 155 [146 P.2d 469], the court held that the defendant has a right to have the jury instructed that "where circumstantial evidence is relied upon by the People it must be *irreconcilable* with the theory of innocence in order to furnish a sound basis for conviction." (Emphasis added.)

In view of the above, it becomes unnecessary to discuss appellant's other assignments of error, and the judgment of conviction must be and is reversed, with directions to the trial court to discharge appellant.

Agee, J., concurred.

KAUFMAN, P. J.—I reluctantly concur on the authority of *Gomez* v. *Superior Court,* 50 Cal.2d 640 [328 P.2d 976]. While I agree that the judgment must be reversed, I do not agree that the defendant should be acquitted as a matter of law as a result of double jeopardy. In the instant case, in addition to the defendant's statement, there is the circumstantial evidence of the victim's wallet which the police discovered after the offense, and the fact that the defendant first told conflicting stories about the wallet, but finally admitted he had removed the wallet from the body and thrown it from the car window to prevent anyone from connecting him with the

decedent. While the prosecution is bound by the defendant's statement, the jury, as the trier of fact, is not, as it may accept or reject the defendant's statement as a whole or in part. If the jury completely rejected the defendant's statement and concluded on the basis of the evidence relating to robbing the decedent of his wallet, and the shooting and killing of the decedent, the result would have to be murder in the first degree (Pen. Code, § 189); if the jury accepted the defendant's statement as a whole, the result would have to be justifiable homicide.

I agree that there is no merit in the prosecution's contention that the evidence indicates a murder in the second degree. The evidence in the record before us warrants a finding either of first degree murder or justifiable homicide. But for the *Gomez* case, the proper procedure would be to reverse the judgment with directions for a new trial, directing that the jury be given instructions only on murder in the first degree and justifiable homicide.

It cannot be said as a matter of law that there is no evidence in the record to show that defendant is guilty of murder in the first degree, a killing in the commission of a felony, to wit: robbery.

Respondent's petition for a hearing by the Supreme Court was denied January 23, 1963.