Appellate Department, Superior Court, Monterey

[Crim. No. 685.    Jan. 5, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JO WILKIN-SON et al., Defendants and Appellants.

Heisler & Stewart and Francis Heisler for Defendants and Appellants.

Bertram N. Young, District Attorney, and Joseph R. Panetta, Deputy District Attorney, for Plaintiff and Respondent.

BRAZIL, J.—The transcript in this appeal discloses very little, if any, conflict in the evidence. Summarizing that evidence in the light most favorable to the respondent, as we of course must do, we find the following circumstances to be the basis of each verdict and resulting judgment of conviction of each of the four appellants.

About 9:30 a.m. on April 5th, the four appellants were arrested by two deputy sheriffs on property belonging to Cortland Hill. They were charged by complaint, signed by one of the deputies later that day, with a violation of Penal Code section 602, subdivision ($l$); it being alleged that each of them "did wilfully and unlawfully enter and occupy real property without the consent of the owner, his agent, or person in lawful possession thereof".

The appellants had come north on Highway 1, from the Big Sur area, arriving near Mr. Hill's property about 10 p.m. on the 4th. They parked their car, evidently on the right of way right next to a wire fence. Using a crouched position, they proceeded through the fence which separates Highway 1 from Mr. Hill's Little Sur Ranch. No damage was done to the fence. They walked (an obvious inference) down toward the

beach on what could be considered a path, but not a designated trail, to a cove of some sort at the beach area.

When the deputies arrived the next morning they found the four intruders at a campsite which they had improvised on the property. No structures of any kind had been made or built; but they had placed a large tarp upon the sand upon which they had laid their sleeping bags. A fire had been built, and the four had been engaged in cooking breakfast with "a primitive device for holding pots on the fire stuck in the sand." Just before being arrested, the only evidence on the subject discloses, they were soon to break camp, go back up the hill and leave the premises. The evidence cannot support a finding that they or any of them intended to remain permanently, or until ousted, or in fact for any longer than just one night's sleeping out encampment. Nor would it support a finding that they dispossessed or intended to dispossess anyone from the property.

None of the appellants had consent of the owner or person in possession or their agents, or employees, to enter or to occupy it. ▮ Whether the ranch was posted or fenced is not involved, for one may violate the provisions of Penal Code section 602, subdivision (*l*) by entry and occupation of unfenced and unposted land. The exact size of the Little Sur Ranch is unknown. All we know is that it is a very large ranch lying between Highway 1 and the Pacific Ocean, that the campsite was from 400 to 600 feet from the highway and 75 feet to 75 yards from high-water mark. The Molera Ranch to the south, which is leased by Mr. Hill is three and one-half miles or so away.

In finding that the appellants did not have consent, we are mindful of the fact that consent can be implied as well as express; but on this score the evidence is sufficient to establish that none of the appellants had consent express or implied to enter the property from anybody. So also, the appellants can find no solace in their claim that they did not know whether the land, so entered upon, was private or public. Again considering the evidence and all reasonable inferences most favorable to the respondents, we hold that they were aware that the land was privately not publicly owned.

The claims of the appellants that (1) the case should have been dismissed because neither Mr. Hill nor his agent signed the complaint, (2) that the court erred in refusing the motion for change of venue because of prejudice induced by coverage of local news media, and, (3) that the appellants have been

subjected to cruel and unusual punishment, are of insufficient merit to warrant discussion.

All other complaints, though set forth under various headings, fall into the general classification of insufficiency of the evidence to support the verdicts of guilty of violations of the charge set forth in the complaint. We approach this phase with the well-known rule in mind that trial courts are in a better position to judge the effect and sufficiency of the evidence than are appellate courts who obtain all their information upon the subject from a written record. Judgments are not to be reversed if the evidence, contradicted or uncontradicted, and the reasonable inferences to be drawn therefrom can support a verdict of guilt.

There is almost no contradiction in the evidence relating to what happened just before the appellants were arrested. There is, however, a dispute as to what the statute (Pen. Code, § 602, subd. (*l*)) means by what it says. It is therefore, quite apparent that it is upon statutory interpretation of the wording of Penal Code, section 602, subdivision (*l*) that this appeal must be determined. From what has heretofore been said, it is apparent that the meaning of the word "occupying" is all important. This statute adopted in 1945 provides: "Every person who wilfully commits any trespass by either: . . . Entering and occupying real property or structures of any kind without the consent of the owner, his agent, or the person in lawful possession thereof; . . . is guilty of a misdemeanor." The complaint is in the exact language of the code section subdivision, except to omit "or structures of any kind."

█ " 'When language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted. . . . █ [I]t is also true that the defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language in a statute.' █ Indeed it is 'the policy of California to construe and apply penal statutes as favorably to the defendant as the language of the statute and the circumstances of its application may reasonably permit.' " (*Walsh* v. *Department of Alcoholic Beverage Control*, 59 Cal.2d 757 at p. 764 [31 Cal.Rptr. 297, 382 P.2d 337].)

█ It is not a violation of Penal Code section 602, subdivision (*l*) to enter private property without consent unless

such entry is followed by occupation thereof without consent. Nor is it a violation to occupy without consent if the entry be made with consent. This is so because the conjunction used is "and" not "or." (*People* v. *Brown*, 236 Cal.App.2d Supp. 915 at p. 920 [47 Cal.Rptr. 662].)

■ The jury was instructed that "occupy" is defined as follows: "To take or enter upon, possession of, to hold possession of, to hold or keep for use, to possess, to tenant, to do business in." While this instruction might have been difficult to follow literally, it is not per se erroneous. The general tenor of the instruction is in conformity with the varying definitions found in briefs of both parties. Among the synonyms for "occupy" are fill, hold and pervade. (Webster's Dictionary.)

The intention with which words are used in the enactment of a statute is of considerable importance, if this can be ascertained. We believe that the evil sought to be cured, and intention with which the particular word "occupy" was used can be readily ascertained by a consideration of the statement of urgency which accompanied the passage of Assembly Bill 1732 (Pen.Code, § 602, subd. (*l*)) in 1945. It reads: "This act is hereby declared to be an urgency measure. . . . A statement of the facts constituting such necessity is as follows: The tremendous increase in the population of this state in the last few years, resulting in a particularly heavy influx of people into the centers of defense industries and areas near military camps, has led to a serious housing shortage. In consequence, there has been an alarming increase in squatter occupancy of lands by lawless and irresponsible persons. This evil should be corrected at once. To enable the authorities to stamp out this epidemic, it is necessary that this act take immediate effect."

■ The purpose of the Legislature in passing subdivision (*l*) of the trespass law is quite clear. It intended the word "occupy" to mean a nontransient, continuous type of possession. ■ Surely the transient overnight use of four 3 x 7 foot areas in a very large ranch for sleeping bags and campfire purposes was not the type of conduct which the Legislature intended to prevent when it used the word "occupy." Had this been so, many another verb could have been used in place of "occupy" to express an intention of preventing such transient use of so small an area, e.g., be, remain, loiter, tarry, camp, stay, and probably many more. ■ Having in mind the legislative purpose in passing subdivision (*l*) of section

602, it is rather obvious that some degree of dispossession and permanency be intended.

Certainly if transient and insubstantial use of so small an area in such a big ranch as is here involved is covered by Penal Code section 602, subdivision (*l*), then many of the other subdivisions of that section, as well as the later adopted section 602.5 (1961) would be unnecessary. The last named section uses language appropriate to the present situation if there had been a structure used instead of open beach area. Note that 602, subdivision (*l*) covers "structures" as does 602.5, but that the former uses "entering *and occupying*" and the latter uses "enters *or remains.*" The section discussed so far as is here pertinent reads: "602.5 Unauthorized entering. . . . Every person . . . who enters or remains in any noncommercial dwelling, house, apartment or other such place without consent of the owner . . . is guilty of a misdemeanor.

To further illustrate the meaning of the word "occupying" reference to the common, ordinary, lay use of the word as is exemplified in everyday conversation comes quickly to mind. A theater goer may be said to occupy a balcony seat, but not the theater; a visitor to the courthouse may be said to occupy the telephone booth but not the building; and a scouting party may remain on the beachhead overnight but that beachhead would not be occupied until it was captured and the enemy ousted.

The judgments of conviction are reversed with directions to the trial court to discharge the four appellants.*

Lawson, J., and Campbell, J., concurred.

---

*N.B. The authority for directing discharge of appellants is found in *People* v. *Mercer*, 210 Cal.App.2d 153, at p. 162 [26 Cal.Rptr. 502] and *People* v. *Cook*, 228 Cal.App.2d 716, at p. 721 [39 Cal.Rptr. 802].