[No. B027908. Second Dist., Div. Seven. May 18, 1988.]

EDMUND ARNE MATTHEWS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Martin Wegman and Henry J. Hall, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Ira Reiner, District Attorney, Harry B. Sondheim, Donald J. Kaplan and Maurice H. Oppenheim, Deputy District Attorneys, for Real Party in Interest.

OPINION

**JOHNSON, J.**—Petitioner seeks a writ of prohibition to restrain the superior court from allowing him to be prosecuted for the murder of Lisa Mather (Pen. Code, § 187, subd. (a)) with the special allegation he was engaged in the commission of rape at the time of the murder (Pen. Code, § 190.2, subd. (a)(17) and for the rape of Lisa Mather (Pen. Code, § 261, subd. (2).) Petitioner alleges the superior court improperly denied his motion to set aside the information pursuant to section 995 (Pen. Code).

We address two issues in this petition: first, did the prosecution establish the corpora delicti of murder and rape at the preliminary hearing; and second, did the superior court properly deny Matthews' section 995 motion because there was sufficient evidence to hold him to answer. For the reasons set forth below, we discharge the alternative writ and deny the peremptory writ.

### STATEMENT OF FACTS AND PROCEEDINGS BELOW

The following evidence was presented to the magistrate at the preliminary hearing. Eighteen-year-old Lisa Mather was last seen by her mother on the morning of January 11, 1985. She was wearing a purple Spandex leotard with a long black skirt over it and a long black jacket. She was also wearing two-inch black pumps with silver studs. Two friends of the victim testified they were with her on Sunset Boulevard at about 1 a.m. where she was seen talking with a man before she disappeared. Amy Steckler testified she and Lisa shared two beers. She saw Lisa talking with a man but she could not describe him well. Anthony O'Farrill could not make an in-court identification but had picked a photo of petitioner out of a police photo lineup which "look[ed] like" the man with Lisa. Lisa was not seen alive again.

Nearly two years later, on December 3, 1986, Paul Yettaw was in Coldwater Canyon when he came upon an abandoned campsite. He followed an animal path and came upon another tent site. It was there he discovered a skull, spinal cord and long leg bones at the base of a tree. There was a rope around the tree and the rope was mixed up with the bones. Yettaw moved the skull, spinal cord and leg bones.

Joseph Anselmo, deputy coroner and forensic dentist, compared original X-rays provided by the victim's dentist with 18 postmortem original X-rays, the skull and lower jaw and concluded the victim was Lisa Mather.

Forensic anthropologist Charles Cargill went to the campsite on December 4, 1986. He testified the bones were on a steep incline with the majority of bones located six to ten feet directly below the tree. In his opinion the bones were of a female Caucasian who was between 16 to 23 years old and between 5'6" to 5'9" in height. The scapula had sustained a puncture wound. It was his opinion the body was not buried in a dug grave because there was no dirt in the nasal aperture but had been covered with brush with dirt shoveled over the brush. He had also observed shovel marks.

Ronald Linhard, supervisory criminalist at the Los Angeles County Coroner's Office, testified he could not conclude whether or not the victim was tied to the tree because he did not see the original location of the bones in relationship to the rope.

Jacqueline Dosch who lived near Coldwater Canyon and Valleyheart testified a young man borrowed a shovel from her on January 28, 1985. She

stated that she would be unable to identify the person again. Police Officer George O'Connor arrested petitioner on January 28, 1985, at the intersection of Coldwater Canyon and Valleyheart. He was carrying a shovel and lantern.

At the preliminary hearing the prosecution made an offer of proof petitioner had been involved in two prior rapes under similar circumstances to show a common plan, scheme and marks. ■ ■■ ■■ A section 403 (Evid. Code) hearing was held. Twenty-year-old Daniella C. testified as follows.[1] She met petitioner on October 13, 1984, in front of the Rainbow Bar and Grill on the Sunset Strip where she had been drinking rum and coke. She and petitioner went to a liquor store and bought some rum which they drank. Petitioner invited her to a party and she went with him to the same Coldwater Canyon campsite where Lisa Mather's remains were discovered. She was intoxicated when she got to the campsite. She started willingly with him but became afraid as they started climbing up the steep hill. He then started pulling her up the hill. The witness testified she never consented to have sex with petitioner. She stated that he put handcuffs on her hands and chains around her ankles against her will. He ripped off her skirt and had intercourse with her.

Janet E. testified she met petitioner on December 22, 1984, at the Rainbow Bar and Grill after midnight. She approached him because she overheard him saying there was a party. After arriving at the house and finding no party the witness and petitioner left with two females who took them to petitioner's place in Coldwater Canyon. She testified she went up the hill alone with petitioner. She tried to leave when he stopped at the tent, but he knocked her to the ground and began to choke her. She became frightened and urinated in her pants. He bound her hands with a scarf and ripped off her clothes. She testified petitioner told her he had a fantasy about tying up a girl and raping her. He tied up her legs and raped her several times. The fourth time he raped her he tied up her arms and legs with shoestrings from his tennis shoes. Two of the rapes occurred outside the tent. Petitioner did not tie her to a tree. She stated that she had had the maximum of two beers before going to the campsite.

The magistrate ruled that evidence of the two rapes was admissible and overruled petitioner's section 352 (Evid. Code) objection on the basis the probative value of the evidence outweighed its prejudicial effect.

Detective Kevin Harley testified that he and his partner interviewed petitioner about the Mather death while he was incarcerated in state prison.

---

[1] The record indicates petitioner was acquitted of charges in this case. "It is well established, however, that an acquittal does not prevent the admissibility of evidence concerning another wrongful act. [Citation omitted.]" (*People* v. *Massey* (1961) 196 Cal.App.2d 230, 234 [16 Cal.Rptr. 402].)

Petitioner's statements were tape recorded. The trial court ruled the tape recording was admissible over the defense's objection that no corpus delicti for murder had been established. In the recording petitioner stated he could barely remember the evening because he was drinking when he met the victim on the Sunset Strip. They went by cab to the Coldwater Canyon campsite. He stated he kept blacking out but remembers coming down the hill thinking he had just killed somebody with a rope. He did not remember how he had tied her up. That morning he went back up to the campsite and covered the body with bushes. Three days later he went back to bury her. He saw the body of a nude girl with a rope around her neck which was tied to a tree. He stated he looked at the body closely and did not see any stab wounds. He tried to untie the rope around her neck but was unable to do so. When asked by the detective whether it was likely he had sex with the victim, he replied "probably."

Petitioner subsequently wrote a statement for the detective dated January 8, 1987. In it he stated he had been drinking all evening when he met a woman in front of the Whiskey a Go Go. They picked each other up and went across the street to have a drink. They decided to go swimming and took a taxi to the Harvard School. He kissed her at the pool, and they had sex on the pool diving ladder. He then invited her to go up the hill. He stated that he found a rope and suggested to her that he tie her up and make passionate love to her. He tied the rope to the tree and wound it around her neck. He went into the tent to determine if the lantern worked when he heard a squeal. He stated as follows: "So I rushed over to her, and she was on her back, coughing and choking. I started crying and panicking, trying to untie her as she coughed. She stopped breathing while I was crying and trying to untie her. I felt her pulse; no pulse. . . ." He then ran down the hill to his friend's apartment. He did not tell the friend what had happened. Later after the incident he went back to bury her with sticks and debris. He unsuccessfully tried to untie her. About two weeks later he borrowed a shovel to bury Lisa. He was arrested when he was walking down Coldwater to Valleyheart.

The magistrate determined there was sufficient cause to hold petitioner to answer for violation of 187, subdivision (a) (Pen. Code) in count one along with the special allegation the murder occurred while he was engaged in the commission of rape (Pen. Code, § 190.2, subd. (a)(17) and for rape in count two (Pen. Code, § 261, subd. (2)). Petitioner's motion to set aside the information (Pen. Code, § 995) was denied by the superior court.

## I. THE PROSECUTION ESTABLISHED THE CORPUS DELICTI OF BOTH MURDER AND RAPE.

██ A defendant may be held to answer in the superior court if it appears from the testimony at the preliminary examination that a crime has

been committed. (*Jones* v. *Superior Court* (1979) 96 Cal.App.3d 390, 393 [157 Cal.Rptr. 809].) ■ The corpus delicti of murder consists of two elements: death of the victim and the existence of some criminal agency as the cause. (*Ureta* v. *Superior Court* (1962) 199 Cal.App.2d 672, 675 [18 Cal.Rptr. 873].) The prosecution must establish the corpus delicti "independently of and without considering the extrajudicial statements, confessions or admissions of the defendant [citations omitted]." (*Jones* v. *Superior Court, supra,* 96 Cal.App.3d at p. 393.) The standard of proof is only a reasonable probability, in other words, a slight or prima facie showing (*ibid.*; see also 1 Witkin, Cal. Crimes (1963) § 90, p. 86) the criminal act of another caused the death (*People* v. *Ives* (1941) 17 Cal.2d 459, 464 [110 P.2d 408]). The corpus delicti may be proved by direct or circumstantial evidence. (*Jones* v. *Superior Court, supra,* 96 Cal.App.3d at p. 393.) We further conclude the corpus delicti may be proved by other acts evidence. (See *United States* v. *Woods* (4th Cir. 1973) 484 F.2d 127, 135-136.)

■ The prosecution made a prima facie showing Lisa Mather was murdered (Pen. Code § 187, subd. (a)). First, a comparison by a forensic dentist of her dental X-rays with 18 postmortem X-rays of the victim's skull and lower jaw substantiated the prosecution's claim the remains were those of Lisa Mather. Testimony by a forensic anthropologist further supported this inference because his examination suggested the bones were those of a female Caucasian who was between 16 to 23 years old and between 5'6" to 5'9" tall. Second, criminal agency was established by Yettaw's testimony that he found bones mixed up with a rope which was tied to a tree and Linhard's testimony there were various loops in the rope.

■■■■ The corpus delicti of rape was also established by the prosecution because the magistrate could have found a reasonable probability on the basis of the physical evidence as well as evidence of two prior rapes that Lisa Mather was murdered while defendant was engaged in committing or attempting to commit a rape.[2] There was a reasonable probability Lisa Mather was nude at the time of death. Linhard testified

---

[2] The prosecution also had the burden to prove the corpus delicti of the felony-based special circumstance independently of the petitioner's extrajudicial statements. (*People* v. *Mattson* (1984) 37 Cal.3d 85, 94 [207 Cal.Rptr. 278, 688 P.2d 887].) Section 190.2, subd. (a)(17) provides: (a) The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in state prison for a term of life without the possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found under Section 190.4, to be true: . . .

" . . . . . . . . .

"(17) The murder was committed while the defendant was engaged in or was an accomplice in the commission of, attempted commission of, or the immediate flight after committing or attempting to commit the following felonies:

" . . . . .

"(iii) Rape in violation of Section 261. . . ."

none of the bones were found within the clothing recovered. He noted however he could not conclude whether or not the body had been clothed at the time of death because he had not observed the original location of the bones. A piece of green fabric was found adhering to the rope. Investigators also recovered fragments of black fabric, a black girdle, black skirt, and a black strap which would be used on a brassiere, some yards from the bones a black shoe with metal rivets around the edge. The rope intertwined with the bones supports the reasonable inference the victim was forcibly restrained by another.

■ Petitioner contends the magistrate erred in admitting evidence of the two prior rapes to establish the corpus delicti of rape or attempted rape. Relying on *People* v. *Estrada* (1923) 60 Cal.App. 477 [213 P. 67] and *People* v. *Toledo* (1948) 85 Cal.App.2d 577 [193 P.2d 953] he argues the prosecution is bound by the entirety of his statement regarding Lisa Mather's death and cannot consider the other acts evidence because there is no evidence she was raped. He claims the only real evidence of what occurred at the campsite with Lisa is found in his statements to the police. We disagree.

"[T]he so-called *Toledo* doctrine (whose genesis seems to have been merely an argument offered on appeal) [footnote omitted] actually refers to a principle of judicial review invoked in homicide prosecutions obviating a defendant's burden of showing mitigation or justification where the prosecution's proof itself tends to show same or a lesser unlawful homicide. [Citations omitted.] The rule in its amended form is properly restricted to those cases where 'all the prosecution evidence points to *excuse or mitigation*. If there is substantial evidence incompatible with the theory of *excuse or mitigation,* the jury may consider all the evidence and determine whether the act amounted to unlawful homicide. [Citations.]' " (*People* v. *Ross* (1979) 92 Cal.App.3d 391, 400 [154 Cal.Rptr. 783] [italics in original], quoting *People* v. *Chapman* (1968) 261 Cal.App.2d 149, 177 [67 Cal.Rptr. 601].) In his oral and written statements petitioner stated that he had tied a rope around Lisa's neck and she died as a result of this act. He further acknowledged having had sexual relations with her that evening and she was nude at the time of her death. These facts support the inference of forced sexual relations even though petitioner implies such activities were voluntary. ■ ". . . [I]f there is prosecution evidence which tends to disprove criminality and other prosecution evidence which tends to prove criminality, it is the function of the trier of fact to determine which version is to be believed." (*People* v. *Acosta* (1955) 45 Cal.2d 538, 542 [290 P.2d 1].) Furthermore *Estrada* and *Toledo* were decided before the Evidence Code became effective January 1, 1967. Sections 780 and 1101, subdivision (c) (Evid. Code) allow the court to consider the credibility of any witness. As stated in *People* v. *Ross, supra,* 92 Cal.App.3d at 400 "[t]o the extent that

the [*Toledo*] doctrine is founded upon a notion that the prosecution is bound by their witnesses' statements [citation omitted], on the antiquated theory of vouchsafing one's own witnesses [citation omitted], that theory has long since been discarded in favor of the modern rule allowing impeachment of a witness by any party, 'including the party calling him.' (Evid. Code, § 785; [citation omitted].)"

Petitioner's reliance on *People* v. *Collins* (1961) 189 Cal.App.2d 575 [11 Cal.Rptr. 504] is misplaced. In that case there was *no* evidence contradicting the defendant's version of the killing which would disprove his claim of self-defense, hence the prosecution was bound by that evidence which tended only to show the killing was justifiable. (*Id.* at pp. 590-591.) ■ "The courts may sometimes say that the prosecution is 'bound by' extrajudicial statements of defendant which are introduced by the prosecution and which are irreconcilable with guilt, but this concept is applicable only where there is no other competent and substantial evidence which could establish guilt. [Citations omitted.]" (*People* v. *Acosta, supra,* 45 Cal.2d at pp. 542-543.)

■ We conclude the evidence was properly admitted under section 1101, subdivision (b) (Evid. Code) to show a common plan and scheme because of the extremely close similarity between the prior acts and the Mather death. It allows the admission of evidence "relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity . . . ." ■ In general, evidence of other offenses is inadmissible because it tends to show only bad character or criminal propensity. (*People* v. *Schader* (1969) 71 Cal.2d 761, 772 [80 Cal.Rptr. 1, 457 P.2d 841].) Thus such evidence is barred "not because it lacks probative value but because its prejudicial effect outweighs its probative value. [Footnote omitted.]" (*Ibid.*) One exception to this general rule is to admit evidence of similar offenses when the prejudicial effect is outweighed by its probative value. (*Id.* at p. 773.)

To determine whether or not the other acts have significant probative value, we must look to the relevance, materiality and necessity of the evidence. (*People* v. *Schader, supra,* 71 Cal.2d at p. 774, see also *People* v. *Thompson* (1980) 27 Cal.3d 303, 315 [165 Cal.Rptr. 289, 611 P.2d 883].) Three young women were picked up by petitioner on the Sunset Strip. All had consumed some alcoholic beverages. In each case petitioner invited the young women to go with him to the same Coldwater Canyon campsite where the remains of Lisa Mather were found. The testimony of the two prior victims that they were bound, their clothes ripped off, and raped support the probative inference petitioner had a plan or scheme to lure young women into the canyon to sexually exploit them. ■ Evidence of the two prior rapes was clearly relevant and material because it tended to

prove the intermediate facts[3] from which the ultimate fact of rape may be proved. (*People* v. *Thompson, supra,* 27 Cal.3d at p. 315.) This case is like *People* v. *Webster* (1971) 14 Cal.App.3d 739, 745 [93 Cal.Rptr. 260] where the autopsy was inconclusive on whether or not sexual intercourse had been voluntary. Evidence of two prior crimes admitted at trial showed that appellant had assaulted two women whom he had met in bars. Similarities in each case included the consumption of alcoholic beverages, appellant driving off with the women; strangling each until one lost consciousness and the other died; and exposing their breasts. (*Ibid.*) Similarly the victim had met appellant in a bar, drank alcoholic beverages with him, and was found strangled with her breasts exposed. (*Ibid.*) On appeal the court held the prior acts evidence was properly admitted because it showed appellant's intent to commit rape and his motive of sexual gratification. (*Id.* at pp. 745-746.)

Similarly in *People* v. *Whitehorn* (1963) 60 Cal.2d 256, 262-263 [32 Cal.Rptr. 199, 383 P.2d 783] the Supreme Court held evidence of a prior offense was admissible. Defendant in that case testified that both acts of sexual intercourse with the victim had been free and voluntary. (*Id.* at p. 260.) Defendent further claimed that he and the victim "had torn off all her clothing 'in the heat of passion.' " (*Ibid.*) The *Whitehorn* court ruled the trial court properly admitted testimony of another victim which showed "[i]n each instance appellant had a male companion with him, had intercourse with the woman twice, and ripped off the woman's clothing until she was nude. Also both women had been invited by appellant to go to one destination in his car but instead had been taken elsewhere, and intercourse occurred in each case in a parked automobile." (*Id.* at p. 263.)

*People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1] is not dispositive.[4] In that case evidence of two prior sex offenses was admitted at trial to show a common plan or design. (*Id.* at p. 82.) The Supreme Court held such evidence was inadmissible because the case presented no issue of identity and no reasonable contention the three sets of sex crimes were part of a larger plan. (*Id.* at pp. 83, 88-89.) Although there was no issue of identity in the case at bar, the three instances were strikingly similar and consequently did tend to show defendant had a common plan for picking up and raping young women at a certain place and in a certain way. Thus they were highly probative of the circumstances surrounding Lisa Mather's death. ". . . [T]he peculiarity of design is that the act is not assumed to be

---

[3] Examples of intermediate facts are motive, opportunity, plan, scheme, design and modus operandi. (*People* v. *Thompson, supra,* 27 Cal.3d at 315, fn. 14.)

[4] We do not address the issue whether or not Proposition 8 (Cal. Const., art. I, § 28, subd. (d)) eliminated the *Tassell* bar. See *People* v. *Ogunmola* (1985) 39 Cal.3d 120, 125 [215 Cal.Rptr. 855, 701 P.2d 1173] (Lucas, J., concurring).

proved, and the design is used evidentially to show its probable commission." (2 Wigmore, Evidence (Chadbourn ed. 1979) § 300, p. 238.) "The *design* or *plan* principle . . . requires that the former act or acts should indicate, by common features, a plan or design which tends to show that it was carried out by doing the act charged." (*Id.* at § 357, subd. (3), p. 334.)

Moreover, *Tassell, supra,* did not address the use of prior acts to establish the corpus delicti of a crime. In *People* v. *Scott* (1959) 176 Cal.App.2d 458, 464 [1 Cal.Rptr. 600] a husband was convicted of the murder of his wife who disappeared. At issue in *Scott* was whether the corpus delicti of murder could be established where the body was never found. (*Ibid.*) In that case the court determined the circumstantial evidence was sufficient to prove the corpus delicti of murder. (*Id.* at pp. 489-491.) The prosecution had presented exhaustive evidence of the husband's activities both before and after his wife's disappearance including forgeries and thefts of her property to show motive and plan. (*Id.* at pp. 473-485.) The *Scott* court reasoned "[a]ll that is required to prove death is circumstantial evidence sufficient to convince the minds of reasonable men of the existence of the fact." (*Id.* at p. 490.) The circumstantial evidence in the case at bar supports the inference petitioner murdered Lisa Mather while engaged in felony rape.

Evidence of prior acts was admitted in *United States* v. *Woods, supra,* 484 F.2d 127, 135 to establish the corpus delicti of murder. Defendant in that case was convicted of the murder of an infant by smothering. (*Id.* at pp. 128-129.) The government presented evidence by a forensic pathologist to show the death was neither accidental nor the result of natural causes. (*Id.* at p. 130.) This witness testified he was 75 percent certain the infant's death was homicide, with the only reservation being the infant could have died from some disease unknown to medical science. (*Ibid.*) The government also presented evidence showing defendant had had custody of or access to nine children who had suffered 20 episodes of cyanosis. (*Ibid.*) The *Woods* court held proof of other incidents involving children was admissible to prove the corpus delicti of murder and child abuse. (*Id.* at p. 136.) It reasoned an unmistakable pattern emerged when the incidents were considered collectively. (*Id.* at p. 135.) Such evidence compels the conclusion "that the probability that some or all of the other deaths, cyanotic seizures, and respiratory deficiencies were accidental or attributable to natural causes was so remote, the truth must be that Paul and some or all of the other children died at the hands of the defendant." (*Id.* at p. 133.) We similarly conclude the circumstantial evidence of the prior rapes at the very least meets the low degree of probative value required to establish the corpus delicti of rape.

## II. THE TRIAL COURT PROPERLY DENIED PETITIONER'S MOTION TO SET ASIDE THE INFORMATION.

 Petitioner contends the evidence presented at the preliminary hearing was insufficient to hold him to answer to the charges of murder and rape. We find no merit in this contention.

"Evidence that will justify a prosecution need not be sufficient to support a conviction. An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." (*Caughlin* v. *Superior Court* (1971) 4 Cal.3d 461, 464 [93 Cal. Rptr. 587, 481 P.2d 211].) "A reviewing court may not substitute its judgment for that of the magistrate as to the weight of the evidence, and every legitimate inference to be drawn from it must be drawn in favor of the information." (*Ghent* v. *Superior Court* (1979) 90 Cal.App.3d 944, 955 [153 Cal.Rptr. 720] and cases cited therein.) Our review of the record supports the inference Lisa Mather was murdered by petitioner during the commission of rape.

 " 'Once prima facie proof of the corpus delicti is made, the extrajudicial statements, admissions, and confessions of a defendant may be considered in determining whether all the elements of the crime have been established.' " (*People* v. *Cooper* (1960) 53 Cal.2d 755, 765 [3 Cal.Rptr. 148, 349 P.2d 964] quoting *People* v. *Duncan* (1959) 51 Cal.2d 523, 528 [334 P.2d 858].) In his taped statement petitioner said he went to the campsite with the victim. Because he had been drinking, he stated that he only recalled coming down the hill thinking that he had killed someone with a rope. According to petitioner in his written statement the victim's death was caused when she slipped down the hill and was choked by the rope. The fact finder was free to place more credence in the taped oral statement than in the exculpatory explanation in the written statement. Petitioner did not tell anyone about the victim's death and attempted to bury her thus demonstrating a consciousness of guilt. These facts alone support the inference of a death by criminal agency and establish the elements of murder.

Regarding the special circumstance allegation of rape in count one and the charge of rape in count two, petitioner stated in the tape recording that upon returning to the campsite he found the victim's nude body with a rope around her neck. Although he was equivocal about having had sexual relations with the victim, he did answer that he "probably" had. In his more detailed subsequent written statement petitioner revealed he had met and picked up the victim on the Sunset Strip. He admitted having sexual relations with her. He took her up to his campsite where he tied her to a tree

with a rope by the neck to have further sexual relations with her. Petitioner's statements reveal his intent was to have sexual relations with the victim. Although he maintains he had consensual sexual relations with Lisa Mather, consent is put into dispute both by the bondage of the victim and the other acts evidence showing he forcibly restrained other women in order to have sexual relations with them. This evidence is enough to "establish a rational ground for assuming the possibility that" Lisa Mather was subjected to forcible sexual intercourse by the petitioner. Accordingly, it is sufficient to hold him to answer to the charge of murder in the commission of a rape.

*At the same time we remind that evidence sufficient to establish a reasonable probability of guilt and thus survive a preliminary hearing may not be enough to prove guilt beyond a reasonable doubt.* In this instance, the evidence before the magistrate as to the rape charge and the rape special circumstances allegation was enough to survive the preliminary hearing but was not enough to prove guilt beyond a reasonable doubt.

## DISPOSITION

The alternative writ is discharged and the peremptory writ is denied.

Lillie, P. J., concurred.

Thompson, J., concurred in the result only.

Petitioner's application for review by the Supreme Court was denied August 11, 1989.